UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELO MICHAEL G.,

                                          Plaintiff,

v.                                                                          6:22-cv-00892 (TWD)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security Administration,

                                          Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OFFICE OF PETER M. HOBAICA, LLC           B. BROOKS BENSON, ESQ.
  *Counsel for Plaintiff*
2045 Genesee Street
Utica, NY 13501

SOCIAL SECURITY ADMINISTRATION           HEETANO SHAMSOONDAR, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, MD 21235

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Angelo Michael G. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant"

or "Commissioner") denying his request for disability insurance benefits ("DIB") and

supplemental security income ("SSI").  (Dkt. No. 11.)  This case has proceeded in accordance

with General Order 18 of this Court.  Pursuant to 28 U.S.C. § 636(c), the parties consented to the

disposition of this case by a Magistrate Judge.  (Dkt. Nos. 4, 7.)  Both parties filed briefs.  (Dkt.

Nos. 11, 15.)  Oral argument was not heard.  For the reasons set forth below, the Commissioner's decision is affirmed.

## I.    BACKGROUND

Plaintiff was born in 1987, completed high school, and attended one year of college. (Administrative Transcript at 278, 680.[1])  He stands five feet and nine inches in height and weighs three hundred and ten pounds.  *Id*. at 325.  Plaintiff lives with his parents and cares for a dog.  *Id*. at 74, 325.  He last worked as a telephone service representative at Bank of America. *Id*.  He stopped working because of his depression, lack of motivation, and social anxiety, stating "it took a toll on me, getting berated and yelled at constantly over the phone" by angry and dissatisfied customers.  *Id*. at 54-55.  He also has worked as a grocery bagger, cart pusher, electronic sales associate, cash register attendant, and casino cage cashier.  *Id*. at 314-16, 326.  At those jobs, he was terminated for attendance issues.  *Id*. at 53.

Mentally, he complains of feeling anxious, depressed, stressed, frustrated, and unmotivated.  *Id*. at 53, 73.  He has reported difficulties interacting with strangers, paying attention, and finishing what he starts.  *Id*. at 67-68, 352-53, 489.  Plaintiff used to enjoy going to concerts and spending time with friends, but he now experiences panic attacks and feels unsafe outside of his house.  *Id.* at 56, 576.  Plaintiff has received routine mental health care in person and more recently via telemedicine and takes medications for his impairments.  *Id*. at 61-65, 72. He spends most of the day in bed and/or sleeping, or on the computer and/or playing

---

[1]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing systems. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

videogames. *Id*. at 53-63. He avoids crowds and goes grocery shopping at 2:00 a.m. *Id*. at 57. Most of his friendships and socialization take place online. *Id*.

On June 26, 2019, Plaintiff protectively filed a Title II application for DIB and a title XVI application for SSI. In both applications, he alleged disability beginning October 31, 2018, due to social anxiety, bipolar disorder, diabetes, hyperthyroidism, high blood pressure, and kidney problems. *Id*. at 278-94, 325. The applications were denied initially on November 7, 2019, and upon reconsideration on April 29, 2020. *Id*. at 78-79, 138-39. A hearing was scheduled for October 29, 2020; however, it was adjourned, as Plaintiff objected to a telephone hearing. On June 17, 2021, Administrative Law Judge ("ALJ") Robyn Hoffman held an online video hearing due to circumstances presented by the COVID-19 pandemic, and Plaintiff testified with counsel. *Id*. at 50-63. No vocational expert ("VE") testified at the hearing. *Id*. at 34-77. The ALJ issued an unfavorable decision on October 27, 2021. *Id*. at 15-27. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on June 30, 2022. (T. 1-6.) Plaintiff commenced this action on August 28, 2022. (Dkt. No. 1.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Standard of Review

In reviewing a final decision of the Commissioner, the court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

B.      **Standard for Benefits**[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable

---

[2]  While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

423(d)(1)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless of
> whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be hired
> if he applied for work.

42 U.S.C. § (d)(2)(A).

The Social Security Administration regulations outline a five-step process to determine

whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a
> "residual functional capacity" assessment, whether the claimant can
> perform any of his or her past relevant work despite the impairment; and (5)
> whether there are significant numbers of jobs in the national economy that
> the claimant can perform given the claimant's residual functional capacity,
> age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117,

120 (2d Cir. 2008)); 20 C.F.R. § 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  "If at any step a

finding of disability or non-disability can be made, the SSA will not review the claim further."

*Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*,

546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the

claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step

to prove the claimant is capable of working.  *Id.*

**III.    THE ALJ'S DECISION**

The ALJ applied the five-step sequential test for determining disability.  (T. at 15-27.)  At step one, the ALJ found Plaintiff meets the insured status requirements through March 31, 2024, and had not engaged in substantial gainful activity since January 8, 2019.  *Id*. at 18.  Proceeding to step two, the ALJ determined Plaintiff suffered from the following severe impairments: major depressive disorder, generalized anxiety disorder, agoraphobia, and borderline personality traits.  *Id*.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  *Id*.  Next, the ALJ surveyed the available record evidence and determined Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels.  *Id*. at 20.  Additionally, he:

> retains the ability to understand and follow simple instructions and directions; perform simple tasks independently; and maintain attention/concentration for simple tasks.  The claimant can regularly attend to a routine and maintain a schedule.  He can relate to and interact appropriately with all others to the extent necessary to carry out simple tasks.  He can handle simple, repetitive, work-related stress, in that he can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that do not require the claimant to supervise nor manage the work of others.  Finally, the claimant should have only occasional contact with the public.

*Id*. at 20-21.

At step four, the ALJ found Plaintiff could not perform his past relevant work.  *Id*. at 25.  Lastly, at step five, relying on the Medical-Vocational Rules set forth in Appendix 2 of 20 C.F.R. Part 404 Subpart P, the ALJ determined Plaintiff could perform other work existing in significant numbers in the national economy.  *Id*. at 25-26.  Accordingly, the ALJ found Plaintiff was not disabled and denied his application for benefits.  *Id*. at 26.

**IV.      DISCUSSION**

Plaintiff argues the Commissioner's decision is tainted by legal error and not supported by substantial evidence.  (Dkt. No. 11.)  Specifically, Plaintiff claims the ALJ erred (1) in failing to properly consider the reports of David Stang, Psy.D., and Sutina Kardas, PA, finding Plaintiff meets mental listings 12.04, 12.06, 12.08, and/or 12.11; (2) in failing to properly consider the reports of Dr. Stang and PA Kardas that Plaintiff lacks the functional mental abilities to engage in work, and has extreme and marked limitations of function precluding any work; (3) in failing to engage the services of a vocational expert; and (4) in failing to consider any of Plaintiff's hearing testimony.  *Id*. at 15-28.  In response, Defendant asserts the ALJ's decision denying benefits applies the correct legal standards and is supported by substantial evidence.  (Dkt. No. 15 at 7-15.)

**A.      Substantial Evidence Supports the ALJ's Determination that Plaintiff Did Not Meet a Mental Health Listing**

**1.      Legal Standard**

At step three, the ALJ must determine whether the individual's severe impairment meets or equals the criteria of any impairment listed in Appendix 1 of the regulations (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d); *see* 20 C.F.R. § 404 subpt. P, app. 1. If an individual's impairment, or combination of impairments, matches the requirements of the relevant listing, then the individual is disabled.  *Id*. §§ 404.1520(d), 416.920(d).  To meet a listing, the individual's impairment "must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  Additionally, even where there is no express rationale for finding an impairment does not meet a listing, a court may uphold the ALJ's decision if the determination is supported by substantial evidence.  *Rockwood*

*v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citing *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

At issue are listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.11 (neurodevelopmental disorders). To satisfy the paragraph B criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area functioning which includes: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; or (4) adapting and managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. Paragraph C requires a medically documented history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *Id*. § 12.00(A)(2)(c).[3]

## 2.    Analysis

Plaintiff argues the ALJ's analysis at step three is legally deficient and does not constitute substantial evidence requiring remand. (Dkt. No. 11 at 15-22.) To that end, he claims the ALJ picks "favorable snippets from the records purportedly showing normal function and ignores

---

[3] The Paragraph C criteria are an alternative to the paragraph B criteria under listings 12.04 and 12.06.

unfavorable evidence." *Id*. at 16.  Plaintiff also suggests the "ALJ appears completely unaware" Dr. Stang and PA Kardas found Plaintiff meets listings 12.04, 12.06, 12.08 and/or 12.11 because she failed to discuss their opinions in the listing analysis. *Id*.  The Court disagrees.

At step three of the sequential analysis, the ALJ found Plaintiff's mental conditions did not meet the criteria for listings 12.04, 12.06, or 12.08.  (T. at 18-20.)  In her deicsion, the ALJ explicitly discussed each of the paragraph B criteria and paragraph C criteria and cited evidence in the record supporting each consideration. *Id*.

First, the ALJ found Plaintiff had a moderate limitation in understanding, remembering, and applying information. *Id*. at 19.  This area of mental functioning refers to the claimant's ability to learn, recall, and use information to perform work activities.  20 C.F.R. § 404, Subpart P, App. 1, § 12.00(E)(1).  In concluding Plaintiff had a moderate limitation in this domain, the ALJ considered Plaintiff's statement that he had problems remembering things.  (T. at 19, 353.)  The ALJ cited the consultative report of Sara Long, Psy.D., who found Plaintiff had intact recent and remote memory, could follow spoken and written instruction, and played computer and video games. *Id*. at 19, 350, 353, 489.  Treatment notes indicated Plaintiff's memory was intact, he was able to recall prior discussions, and often discussed how playing video games furthered his goals of developing his own video game. *Id*. at 19, 443, 564-76, 646.  The ALJ also cited the opinion of consultant L. Haus, Psy.D., who reviewed the record and assessed a moderate limitation in this domain. *Id*. at 20, 113-18.

With respect to interacting with others, the ALJ concluded Plaintiff had a moderate limitation. *Id*. at 19.  This area of mental functioning refers to the claimant's ability to relate and work with supervisors, co-workers, and the public.  20 C.F.R. § 404, Subpart P, App. 1, § 12.00 (E)(2).  In support of her determination, the ALJ noted although Plaintiff alleged difficulty

interacting with strangers, Dr. Long reported Plaintiff was cooperative with good social skills. *Id*. at 19, 489.  Dr. Long found Plaintiff had appropriate eye contact, fluent and clear speech, good family relationships, and was able to interact adequately with others.  *Id*.  Plaintiff reported being able to shop in stores and socialized on Facebook and Discord.  *Id*. at 349, 434.  Moreover, treatment records described Plaintiff as calm and personable, and he reported no problems with authority figures.  *Id*. at 353, 538.  The ALJ further cited Dr. Haus' opinion that Plaintiff was moderately limited in this domain.  *Id*. at 19, 131.

Next, the ALJ determined Plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace.  *Id*. at 19.  This area of mental functioning refers to the claimant's ability to focus attention on work activities and stay on task at a sustained rate. 20 C.F.R. § 404, Subpart P, App. 1, § 12.00(E)(3).  In making this determination, the ALJ evaluated Plaintiff's reported difficulty paying attention and finishing what he started; however, the ALJ also noted Dr. Long's assessment that Plaintiff's attention and concentration were intact. *Id*. at 19, 489.  Additionally, Dr. Long and treating providers found Plaintiff had logical, organized, and goal-directed thought processes.  *Id*. at 19, 352, 469, 489.  Records indicated he could follow spoken and written instructions and spent significant time on the computer and playing video games.  *Id*. at 19, 353, 602.  The ALJ also relied on Dr. Haus' opinion that Plaintiff has a moderate limitation in this domain.  *Id*. at 19, 131.

Last, the ALJ determined Plaintiff had a moderate limitation for adapting or managing himself.  *Id*. at 19.  This area of mental functioning refers to the claimant's ability to regulate emotions, control behavior, and maintain well-being in a work setting.  20 C.F.R. § 404, Subpart P, App. 1, § 12.00(E)(4).  In support of her determination, the ALJ referenced Plaintiff's alleged difficulty handling stress and records describing intact insight and judgment.  (T. at 19, 353,

495.)  The ALJ noted Plaintiff had not required any impatient mental health treatment, had friends, and spent his days "playing video games and just relaxing." *Id*. at 19, 602. Additionally, Dr. Haus determined Plaintiff had a moderate limitation in adapting or managing himself. *Id*. at 20, 120, 131.

Based on the ALJ's analysis, which is supported by treatment notes, Plaintiff's statements, and medical opinions of record, her determination Plaintiff's limitations did not satisfy the paragraph B criteria was supported by substantial evidence.[4]  *See Beau M. v. Comm'r of Soc. Sec.*, No. 8:18-CV-1170 (ATB), 2020 WL 586868, at *5 (N.D.N.Y. Feb. 6, 2020) (finding substantial evidence consisting of plaintiff's testimony, intact daily activities, observations from his physicians, and consultative examination results supported ALJ's paragraph B analysis of no more than moderate limitation in any domain); *Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *6 (N.D.N.Y. Sept. 18, 2019) (same) (citing *Sweet v. Comm'r of Soc. Sec.*, No. 6:15-CV-0156 (GTS/WBC), 2016 WL 11478205, at *3 (N.D.N.Y. July 6, 2016) ("Under the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position[;] [p]laintiff must show that no reasonable factfinder could have reached the ALJ's conclusion based on the evidence in record"), *report-recommendation adopted*, 2016 WL 4401374 (N.D.N.Y. Aug. 18, 2016)).

---

[4]  Although the ALJ did not explicitly consider listing 12.11 in her decision, any error the ALJ may have made is harmless.  Because the ALJ found, based upon substantial evidence, Plaintiff's mental impairments did not meet the paragraph B criteria for listings 12.04, 12.06, and 12.08, she implicitly determined Plaintiff's impairments did not meet the paragraph B criteria for listing 12.11.  *See Wayne P. v. Kijakazi*, No. 8:22-CV-653 (ATB), 2023 WL 3949877, at *5 (N.D.N.Y. June 12, 2023) (finding harmless error at step three with respect to the paragraph B criteria) (collecting cases).

The ALJ also reasonably concluded the evidence failed to establish the presence of paragraph C criteria noting Plaintiff maintains personal care, prepares basic meals, drives, goes out alone, shops in stores, uses a computer, and socializes with others. *Id.* at 20, 346-55. *See Jeffrey W. v. Berryhill*, No. 1:18-CV-0015 (LEK), 2019 WL 2210593, at *7-8 (N.D.N.Y. May 22, 2019) (finding plaintiff did not satisfy the paragraph C criteria with the requisite "marginal adjustment" where plaintiff's daily activities including managing money, playing poker, using his computer, driving a car, shopping, cooking, fishing, walking the dogs, cleaning his clothes, and vacuuming, and medical evidence indicated plaintiff's good concentration, intact memory, normal thought content, and goal oriented thought process); *Mitchell v. Berryhill*, No. 16-CV-6588, 2018 WL 3300683, at *18 (S.D.N.Y. Feb. 2, 2018), *report-recommendation adopted sub nom.*, *Mitchell v. Colvin*, 2018 WL 1568972 (S.D.N.Y. Mar. 30, 2018) (finding claimant did not have marginal adjustment where claimant had interactions with family and friends at church, logical thought processes, intact judgment, good concentration, and could cook, clean, shop, and do laundry).

To the extent Plaintiff argues the step three finding is tainted by legal error and is not supported by substantial evidence because the ALJ did not discuss Dr. Stang's or PA Kardas' findings of extreme and marked limitation of functioning at step three, the ALJ adequately explained why she rejected those opinions, as further discussed below. (*See* Dkt. No. 11 at 15-22; Dkt. No. 15 at 10-11.) Accordingly, the ALJ was not required to adopt their restrictive limitations in her listing analysis and remand is not warranted on this basis. *Wayne P.*, 2023 WL 3949877, at *5 ("[T]he mere fact that Dr. Stang opined that plaintiff meets the criteria of the mental Listings does not obligate an ALJ to find that the plaintiff meets a Listing. The ALJ both provided a detailed explanation regarding why he found plaintiff did not meet or equal a mental

listing and appropriately explained his reasons for not relying on Dr. Stang's opinion in general.") (quoting *Daniel E. v. Kijakazi*, No. 6:20-CV-1270 (DEP), 2022 WL 602533, at *8 (N.D.N.Y. Mar. 1, 2022)).  Here, although the ALJ did not explicitly discuss Dr. Stang's or PA Kardas' opinions at step three, it is clear, based on the ALJ's step four analysis she properly considered the overall record in concluding Plaintiff does not meet the required mental listings. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005) ("Where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)); *see also Daniel E.*, 2022 WL 602533, at *8 ("[T]he fact the ALJ did not specifically discuss Dr. Stang's opinion when analyzing those [listings] criteria does not mean that he failed to consider it, and it is clear that the same rationale the ALJ provided for finding the functional portions of Dr. Stang's opinion unpersuasive would also apply to the Listing portion of Dr. Stang's opinion.") (citation omitted).

Ultimately, "[t]he ALJ was well within [her] duty to reconcile the conflicting evidence and determine that the plaintiff's impairments, or combination of impairments, did not meet or equal a listing."  *Richard B. v. Comm'r of Soc. Sec.*, No. 20-CV-0585, 2021 WL 4316908, at *6 (W.D.N.Y. Sept. 23, 2021).  It is not the Court's role to reweigh the evidence supporting the ALJ's contrary determination.  *See Boffoli v. Comm'r of Soc. Sec.*, No. 20-CV-5317, 2022 WL 973754, at *9 (S.D.N.Y. Mar. 31, 2022) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve, and the deferential standard of review prevents us from reweighing it."); *see Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

13

For the reasons stated above, the Court finds the ALJ properly considered Plaintiff's

mental impairments in conjunction with the listings and reasonably concluded that his

impairments did not meet or medically equal a listing singly or in combination.  Remand is not

required based on the ALJ's step three findings because they are supported by substantial

evidence.

**B.      Substantial Evidence Supports the RFC Determination**

       **1.      Legal Standards**

              **a.      RFC**

A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability

to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A

regular and continuing basis means eight hours a day, for five days a week, or an equivalent

work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v.

Apfel*, 198 F.3d 45, 54 (2d Cir. 1999)).  "In making a [RFC] determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis."  *Id.*

(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by

an individual's response to demands of work . . . must be reflected in the RFC assessment.'"

*Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11,

2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth

with sufficient specificity to enable [the Court] to decide whether the determination is supported

by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

**b.      Evaluating Medical Evidence**

Under the new regulations, applicable here, the Commissioner "will no longer give any specific evidentiary weight to medical opinions."  *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021) (citations and quotations omitted).  Rather, the Commissioner will consider all medical opinions and "evaluate their persuasiveness" based on their "supportability; consistency; relationship with the claimant; specialization; and 'other factors.'"  *Id.* (citing 20 C.F.R. §§ 404.1520(c)(1)-(5), 416.920c(c)(1)-(5)).  Supportability and consistency are "the most important factors" in determining whether a medical opinion is persuasive.  20 C.F.R. §§ 404.1520(c)(b)(2), 416.920c(b)(2).

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant . . . objective medical evidence and supporting explanations," the "more persuasive" it will be.  20 C.F.R. § 404.1520c(c)(1); *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The 'supportability' factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.")  Under the consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 404.1520c(c)(2); *Vellone v. Saul*, No. 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report-recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.").

While "the new regulations eliminate the perceived hierarchy of medical sources [and] deference to specific medical opinions . . . the ALJ must still 'articulate how [she] considered the

medical opinions' and 'how persuasive [she] finds all of the medical opinions.'" *Brian O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-983 (ATB), 2020 WL 3077009 at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b)).  An ALJ is explicitly required to "explain how [she] considered the supportability and consistency factors."  20 C.F.R. §§ 404.1520(c)(b)(2), 416.920c(b)(2).

### c.      Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must carefully consider all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including daily activities and the location, duration, frequency, and intensity of their pain or other symptoms. *Del Carmen Fernandez v. Berryhill*, No. 18-CV-0326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016, the Commissioner eliminated the use of the term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged[.]" 20 C.F.R. §§ 404.1529(a),(b), 416.929(a),(b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be

accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing, *inter alia*, 20 C.F.R. § 404.1529(a); *Genier*, 606 F.3d at 49) (alterations in original).

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id.*; *see also Del Carmen Fernandez*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

2.      **Analysis**

As set forth above, the ALJ determined Plaintiff retained the RFC to perform a range of work at all exertional levels.  (T. at 20.)  Plaintiff does not assert any error in this regard. Additionally, the ALJ determined Plaintiff:

> retains the ability to understand and follow simple instructions and directions; perform simple tasks independently; and maintain attention/concentration for simple tasks.  The claimant can regularly attend to a routine and maintain a schedule.  He can relate to and interact appropriately with all others to the extent necessary to carry out simple tasks.  He can handle simple, repetitive, work-related stress, in that he can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that do not require the claimant to supervise nor manage the work of others.  Finally, the claimant should have only occasional contact with the public.

*Id*. at 20-21.

Here, Plaintiff primarily argues the RFC is not supported by substantial evidence because she failed to properly evaluate the opinions of Dr. Stang and PA Kardas.  (Dkt. No. 11 at 22-27.) The Court disagrees.

In her mental RFC analysis, the ALJ surveyed the treatment records and discussed the opinions and prior administrative findings.  (T. at 20-25.)  Of these, the ALJ found the opinions of Dr. Long and Dr. Haus persuasive, and the opinions of Dr. Stang and PA Kardas less persuasive, as summarized below.

Dr. Long performed a consultative examination on Plaintiff on October 29, 2019.  *Id.* at 488-91.  Plaintiff reported bipolar disorder with manic symptoms, lack of motivation, social anxiety, agoraphobia, and difficulty sleeping.  *Id.* at 488.  Plaintiff stated he takes care of his own grooming, cooking, cleaning, and laundry.  *Id.* at 489.

During the examination, Plaintiff exhibited normal posture and motor behavior. *Id.* at 489.  He appeared neat and well-groomed and was able to maintain appropriate eye contact. *Id.* Plaintiff demonstrated a full range of appropriate affect in his speech and no agoraphobic symptoms were observed. *Id.*  His mood was euthymic, and his orientation, judgment, attention, concentration, and memory were intact. *Id.*  He did serial 7s, repeated 3 objects immediately and after 5 minutes had passed, and he completed digits forward to 6 and backward to 3. *Id.* Plaintiff appeared to be functioning on an average intellectual level with a somewhat limited fund of information. *Id.*  Judgment was fair; insight was fair to poor. *Id.*

Ultimately, Dr. Long opined no limitations were observed regarding simple and complex tasks and making appropriate decisions. *Id.*  Plaintiff could interact adequately with others but had some mild limitations with social anxiety. *Id.*  He could maintain attention and concentration and was able to maintain a regular schedule. *Id.* at 489-90.  Dr. Long found a mild-to-moderate limitation regulating emotions. *Id.* at 489.

The ALJ found Dr. Long's opinion to be persuasive because it was supported by the doctor's essentially normal mental status examination findings and was consistent with other evidence in the record, which noted appropriate judgment and intact memory, and improved mood with medication. *Id.* at 23-24, 618, 646.  The ALJ reiterated Dr. Long examined Plaintiff and has professional expertise. *Id.* at 24.

Dr. Haus reviewed the available record on April 24, 2020, and opined Plaintiff was capable of simple, low-contact work. *Id.* at 23, 114, 131.  The ALJ also found Dr. Haus' opinion persuasive because it was supported by records which described an appropriate affect, good eye contact, intact memory, no psychomotor retardation, and organized, logical, and goal-directed thought processes. *Id.* at 23, 444, 477, 495, 497, 499, 501, 540.  She found Dr. Haus' opinion

consistent with other records indicating organized, logical, and goal directed thought processes, as well as intact insight and judgment. *Id*. Dr. Haus' opinion was also consistent with records indicating no depressive symptoms and manageable anxiety. *Id*. at 23, 594, 615. The ALJ noted Dr. Haus reviewed the record and has program and professional experience. *Id*. at 23.

On May 4, 2021, treating provider PA Kardas answered a questionnaire provided to her by Plaintiff's counsel. *Id.* at 604-10. PA Kardas indicated Plaintiff has severe and recurrent major depression and panic disorder with agoraphobia. *Id.* at 604. She described Plaintiff's thought process as clear, logical, and future oriented. *Id.* PA Kardas noted Plaintiff's anxiety was currently stable but reported his anxiety tends to worsen when he leaves his house. *Id.* She explained Plaintiff is deterred from leaving his house because he suffers from panic disorder and agoraphobia, which ultimately affects his ability to create and maintain professional and personal relationships. *Id.*

PA Kardas recorded symptoms of depressed mood, lack of interest in activities, problems sleeping, self-esteem issues, suicidal thoughts, panic attacks, anxiety leaving the house, intrusive thoughts, and the inability to maintain relationships. *Id.* at 605. She opined Plaintiff was unable to meet competitive work standards in the following areas: remembering work-like procedures, understanding and remembering short and simple instructions, carrying out short and simple instructions, maintaining regular attendance, making simple work-related decisions, performing at a consistent pace, accepting instructions and responding to criticism from supervisors, and responding appropriately to changes in the work setting. *Id.* at 606. Further, PA Kardas indicated Plaintiff had no useful ability to function in the following areas: work in coordination with or proximity to others without being distracted, complete a normal workday or week, ask a simple question or request assistance, get along with co-workers or peers, and deal with normal

work stress. *Id.* PA Kardas assessed Plaintiff was seriously limited in maintaining attention for two-hour segments and sustaining an ordinary routine at work. *Id.* She also opined Plaintiff would likely need to take unscheduled breaks two to four times per day, each lasting fifteen to thirty-minutes; would be off task 25% or more of the workday; and would likely miss more than four days of work per month. *Id.* at 609.

The ALJ found PA Kardas' opinion less persuasive because the extreme limitations were not consistent with or supported by the record, including Dr. Long's and Dr. Haus' opinions, and the treatment notes which showed intact memory, appropriate affect, intact insight, intact judgment, improvement with medication, and some ability to socialize. *Id*. at 24. For example, the ALJ noted PA Kardas cited agoraphobia as Plaintiff's primary issues, yet the record demonstrates he takes his father to appointments and goes to the grocery store. *Id*. at 24, 623. Further, recent records describe Plaintiff's anxiety as manageable and noted Plaintiff has had a good response to medication and was stable with overall improved symptoms. *Id*. at 24, 615. The ALJ also found PA Kardas' assessments regarding off task and absenteeism to be speculative and not supported by the overall record, noting Plaintiff spends significant time playing video games. *Id*. at 24, 434. Lastly, the ALJ noted Plaintiff provided an array of reasons why he did not want to seek employment, "mostly due to the type of work he is interested in and his desire to have work be more than a paycheck." *Id*. at 24, 570.

At Plaintiff's request, Dr. Stang conducted a psychological evaluation of Plaintiff and completed a mental impairment questionnaire on June 19, 2021. *Id.* at 672-94. During the examination, Plaintiff described recurrent depressive episodes and described feelings of hopelessness, loss of interest, irritability, and lack of motivation. *Id.* at 682-83. Plaintiff

reported a lack of stable friendships and explained he only socialized with friends online and has failed to maintain relationships with childhood friends or family members. *Id.* at 683.

Dr. Stang indicated Plaintiff suffered from very severe depression, social anxiety, agoraphobia, and generalized anxiety in that "[h]e currently experiences agoraphobic tendencies, and he is extremely fearful of leaving the house. He still experiences episodes of depression, when he does not get out of bed, and consequently, he had absenteeism problems with all of his jobs." *Id.* at 693.

Dr. Stang's mental impairment questionnaire paralleled PA Kardas' May 2021 questionnaire. Specifically, Dr. Stang found Plaintiff had extreme limitations of functioning that would preclude his ability to perform unskilled work including completing a normal workday or work week without psychological symptoms, dealing with normal work stress, maintaining regular attendance or being punctual, sustaining an ordinary routine without special supervision, and performing at a consistent pace without an unreasonable number and length of rest periods. *Id*. at 674. He opined Plaintiff was unable to meet competitive standards of work in four areas: maintaining attention for two-hour segments, working in coordination with or proximity to others, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in a routine setting. *Id*. He also indicated Plaintiff would be absent from work more than four days per month, would be off task 25% or more of the workday, and would need to take an unscheduled work break "every few hours" lasting for "30 minutes" each workday. *Id*. at 677.

The ALJ found the opinions of Dr. Stang less persuasive because they were not consistent with, nor supported by, the record as described above. *Id*. at 24-25. For instance, Dr. Stang mentioned several times throughout his evaluation and questionnaire that Plaintiff

presented severe deficits in memory, concentration and eye contact. *Id*. at 672, 675. However, treatment records indicated Plaintiff's thought process was goal directed, logical, and organized and his insight and judgment were intact. *Id*. at 444, 477, 495, 497, 499, 501, 540. Records indicated Plaintiff reported "doing well" and denied any depressive symptoms, and records from 2021 described Plaintiff anxiety as manageable. *Id*. at 24, 594, 615. The ALJ noted Plaintiff was able to spend his time socializing with friends, working on computer projects, relaxing, and playing video games. *Id*. at 24, 434, 602. Additionally, Dr. Stang's opinions were inconsistent with Dr. Long's opinions. *Id*. at 489.

Thus, Plaintiff's argument the ALJ improperly evaluated Dr. Stang's and PA Kardas' opinions is without merit. (Dkt. No. 11 at 22-27.) As noted above and in accordance with the regulations, the ALJ was required to explain how she considered the supportability and consistency factors of a medical source's opinions or prior administrative medical findings in the decision. 20 C.F.R. §§ 404.1520(c)(b)(2), 416.920c(b)(2)). The ALJ did that here and the RFC is supported by substantial evidence. *See Christina M. v. Saul*, No. 3:18-cv-00332 (CFH), 2019 WL 3321891, at*6 (N.D.N.Y. July 24, 2019) (explaining that it is "within the ALJ's purview to rely on the opinion" of a state agency physician who reviewed the evidence); *Mongeur*, 722 F.2d at 1039 (opinion of consultative examiner may constitute substantial evidence to support an ALJ's decision).

Relatedly, the ALJ did not ignore or "cherry-pick" evidence that supported her decision. (Dkt. No. 11 at 22.) Rather, the ALJ properly carried out her responsibility to "review[] all of the medical and other evidence before [her], resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole." *Katherine Marie S. v. Comm'r of Soc. Sec.*, No. 18-00233, 2019 WL 1427456, at *8 (N.D.N.Y. Mar. 29, 2019). As explained above,

the ALJ properly considered the evidence in accordance with the regulations, and she reasonably relied on the assessments of Drs. Long and Haus and the overall record.  "Genuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino v. Barnhard*, 312 F.3d 578, 588 (2d Cir. 2002).

Moreover, moderate limitations, as found by Dr. Haus, are not an impediment to the ability to perform gainful activity, particularly when an RFC has already limited a claimant to unskilled, routine work.  *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *Melisa G. v. Berryhill*, No. 3:18-CV-508 (DJS), 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (holding "moderate limitations are not prohibitive of performing unskilled work.").  Thus, the ALJ identified substantial evidence to reasonably conclude Plaintiff's mental impairments did not prevent him from working in unskilled positions consisting of simple and routine tasks.  (T. at 20.)  *See Mongeur*, 722 F.2d at 1039 (opinion of consultative examiner may constitute substantial evidence to support an ALJ's decision); *see also Grega v. Saul*, 816 F. App'x 580, 582-83 (2d Cir. 2020) (finding consulting examiner's opinion supported ALJ's decision and holding "[a] consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record"); *Guerra v. Comm'r of Soc. Sec.*, 778 F. App'x 75, 77 (2d Cir. 2019) (holding that consulting psychologist's opinion supported ALJ's decision).

In sum, it is not for the Court to reweigh the evidence, as Plaintiff urges.  *See Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec.*, No. 19-CV-9253, 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021) ("However, the reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation."), *report-recommendation adopted sub nom. Cruz v. Comm'r of Soc. Sec.*, 2021

WL 4124225 (S.D.N.Y. Sept. 9, 2021).  "It is well-established that the ALJ has both the ability

and the responsibility to resolve conflicts in the evidence."  *Doty v. Comm'r of Soc. Sec.*, No.

1:16-CV-1276 (GTS), 2017 WL 4621630, at *6 (N.D.N.Y. Oct. 13, 2017).

Plaintiff also maintains, as part of his arguments related to Dr. Stang's and PA Kardas'

opinions, the ALJ "failed to discuss Plaintiff's negative reaction to stress and how it affects his

ability to work."  (Dkt. No. 11 at 25.)  Plaintiff's argument is squarely contradicted by the ALJ's

decision.  The ALJ explicitly discussed stress in the RFC finding and limited Plaintiff to only

"simple, repetitive work-related stress, in that he can make occasional decisions directly related

to the performance of simple tasks in a position with consistent job duties that do not require

[him] to supervise or manage the work of others."  (T. at 20-21.)  While the ALJ did not recite

every limitation opined in Dr. Stang's opinion, she was not required to do so in order to show

that every limitation was considered.  *See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir.

2012) (acknowledging that "an ALJ is not required to discuss every piece of evidence

submitted").  It is clear the ALJ considered Dr. Stang's opinion in its entirety, and she provided

multiple specific reasons why she found that opinion was not persuasive.  (T. at 24-25.)  This

argument is therefore entirely without merit.

Next, Plaintiff takes issue with the ALJ's treatment of Dr. Stang's and PA Kardas'

opinions regarding off-task behavior and absenteeism.  (Dkt. No. 11 at 25-26.)  However, as

discussed above, the ALJ properly considered Dr. Stang's and PA Kardas' opinions and

reasonably found them less persuasive because they were inconsistent with the record, including

Dr. Long's opinion.  (T. at 24-25.)  Notably, Dr. Long opined Plaintiff could maintain a regular

schedule and had no limitations completing simple and complex tasks.  *Id*. at 489-90.  Similarly,

while Dr. Haus found Plaintiff had a moderate limitation for performing activities within a

schedule, the doctor also found that Plaintiff was not limited in the ability to sustain an ordinary routine without supervision and could perform simple, low-contact work.  *Id*. at 131-35.  Thus, remand is not warranted on this ground.  *See Smith*, 740 F. App'x at 725 (rejecting assertion that the ALJ was required to identify evidence that explicitly rebutted the opinions of treating physicians as to his ability to stay on-task and maintain regular attendance before discounting or rejecting those opinions).

Finally, Plaintiff argues the ALJ erred when assessing his subjective reports because she failed to fully consider his hearing testimony.  (Dkt. No. 11 at 27-28.)  Here, the ALJ was clearly aware of the requirements of, and her obligations under, SSR 16-3p, and the Court finds no error in her evaluation of Plaintiff's subjective complaints that would require remand.  (T. at 21-25.)

In evaluating Plaintiff's symptoms, the Court finds the ALJ properly considered Plaintiff's subjective complaints and evaluated his symptoms in accordance with proper legal standards and the determination is supported by substantial evidence.  *Id*.  The ALJ considered Plaintiff's allegations that he could not work due to mental illness and his hearing testimony that he has difficulty being around others and handling stress; he spends a lot of time in bed; he has low energy during the day; and he has difficulty focusing.  *Id*. at 21.

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his subjective allegations were not entirely consistent with the medical evidence and other evidence in the record.  *Id*.  The ALJ cited medical evidence and opinions, which she found persuasive, that did not reflect the limitations suggested by Plaintiff's subjective complaints.  *Id*. at 21-25; *see* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the

effect of those symptoms.").  As discussed herein, treatment notes from 2020 described Plaintiff

as calm and personable, and that Plaintiff reported improved symptoms.  (T. at 22, 538, 618.)

Additionally, records from 2021 described Plaintiff's anxiety as "manageable," and that Plaintiff

reported an improvement in his mood due to medication.  *Id*. at 22, 615, 618.

 The ALJ also discussed Plaintiff's daily activities and noted Plaintiff listened to music,

played video games, spent time on the internet, socialized on Facebook and Discord, shopped,

and cared for his dog.  *Id*. at 22; *see* 20 C.F.R. §§ 404.1529(c)(3)(i); 416.929(c)(3)(i) ("Factors

relevant to your symptoms" include "[y]our daily activities").  Plaintiff also stated he takes care

of his own grooming, cooking, cleaning, and laundry.  (T. at 489.)  Plaintiff's argument,

therefore, is best understood as a disagreement with the manner in which the ALJ relied upon the

evidence.  *See Steven H. v. Comm'r of Soc. Sec.*, No. 20-cv-404, 2021 WL 1893476, at *5 n.9.

"Since the record contained some evidence that was inconsistent with Plaintiff's subjective

complaints, the ALJ had discretion to weigh[] that evidence against Plaintiff's subjective

complaints."  *Edward J.*, 2022 WL 4536257, at *6 (citation omitted).

 In sum, the ALJ considered the objective medical evidence, Plaintiff's hearing testimony,

and his complaints of pain.  (T. at 20-25.)  In evaluating the record, "[t]he ALJ need not

explicitly reconcile every conflicting shred of evidence."  *Whipple v. Colvin*, No. 5:12-CV-0588

(LEK/CFH), 2014 WL 1123459, at *8 (N.D.N.Y. Mar. 21, 2014).  Therefore, the Court finds no

error with the ALJ's determination that Plaintiff's largely normal examinations and wide-ranging

daily activities did not support his subjective complaints of disabling mental health limitations.

(T. at 21.)  *See Mideczky v. Colvin*, No. 5:15-CV-0531 (GTS), 2016 WL 4402031, at *10

(N.D.N.Y. Aug. 18, 2016) (finding ALJ properly discounted plaintiff's allegations of mental

limitations given "[p]laintiff's normal mental status examinations and broad range of daily

activities," including her ability to "prepare simple meals, perform some cleaning, go shopping, watch television," and "drive a motor vehicle"). Again, Plaintiff's argument is primarily that he disagrees with the ALJ's assessment of the record. The Court, affording the ALJ's decision the appropriate deference, concludes that the ALJ's finding regarding Plaintiff's subjective complaints is supported by substantial evidence. *Amanda S. v. Kijakazi*, No. 3:21-CV-240 (DJS), 2022 WL 4104008, at *6 (N.D.N.Y. Sept. 8, 2022).

Accordingly, the ALJ relied upon substantial evidence to support her RFC determination related to Plaintiff's mental impairments, and there is no basis for remand regarding this determination.

### C. Substantial Evidence Supports the ALJ's Step Five Finding

#### 1. Legal Standard

Generally, the Commissioner meets her burden at the fifth step by resorting to the applicable Medical-Vocational Guidelines commonly known as the grids. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2). The grids "take administrative notice of the numbers of unskilled jobs at various exertional levels that exist throughout the national economy." *Erin G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1595 (ATB), 2022 WL 580445, at *13 (N.D.N.Y. Feb. 25, 2022) (citations omitted). "However, if a claimant has non-exertional limitations that significantly limit the range of work permitted by his exertional limitations, the ALJ is required to consult with a vocational expert." *Tiffany G. v. Kijakazi*, No. 6:21-CV-385 (FJS), 2022 WL 3027144, at *9 (N.D.N.Y. July 29, 2022) (internal quotation marks, alterations, and citations omitted). However, "the mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines." *Id.* (internal quotation marks omitted; alterations in original; citations omitted)). "A

non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Id*. (quoting *Zabala*, 595 F.3d at 410-11 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986))). An ALJ's determination of whether a claimant's nonexertional limitations significantly impact his ability to perform work constitutes a finding of fact, subject to deferential review. *Jordan v. Comm'r of Soc. Sec.*, 194 F. App'x 59, 61 (2d Cir. 2006).

## 2. Analysis

Plaintiff argues the ALJ erred at step five because he has "mental impairments, at an extreme and marked level, that take the case out of the Grids and required that the ALJ use a vocational expert." (Dkt. No. 11 at 27.) But as the Commissioner points out, Plaintiff's argument is a rehashing of his earlier arguments as he again relies on the extreme and marked limitations identified in Dr. Stang's and PA Kardas' opinions. (Dkt. No. 15 at 14.) As already discussed above, the ALJ properly weighed all the evidence and crafted an RFC finding that was supported by the record. *See Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) ("Because we have already concluded that substantial evidence supports the RFC finding, we necessarily reject [the plaintiff's] vocational expert challenge.").

Specifically, the ALJ limited Plaintiff to unskilled, simple work that included only occasional contact with the public and occasional decision-making with no supervision or managing of others. (T. at 20-21.) The ALJ explicitly found the restrictions in the RFC had "little or no effect on the occupational base of unskilled work at all exertional levels," because: unskilled work involves working primarily with things and not people. *Id*. This conclusion was not erroneous. "The law is clear that restricting a claimant to occasional contact with others and

to simple and unskilled work does not significantly impact the potential occupational base, particularly where a claimant can perform work at all exertional levels." *Shawn C. v. Comm'r of Soc. Sec.*, No. 20-CV-1378, 2022 WL 17037624, at *6 (W.D.N.Y. Nov. 17, 2022) (citing *Fisk v. Colvin*, 2017 WL 1159730 (W.D.N.Y. Mar. 29, 2017) (upholding the ALJ's reliance on the grids where ALJ found the claimant had the RFC for work at all exertional levels with a limitation to jobs involving simple, routine, repetitive type tasks, and only occasional contact with others because it had "little or no effect" on the occupational base of unskilled work at all exertional levels); *Cross v. Astrue*, No. 08-CV-0862 (TJM/VEB), 2010 WL 2399379, at *15 (N.D.N.Y. May 24, 2010) (explaining that limitations to occasional contact with the public and coworkers and occasional changes in work setting did not necessitate vocational expert testimony)).

Having reviewed the record, this Court finds the ALJ sufficiently explained why she reasonably relied on the grids even though Plaintiff suffered from nonexertional limitations.  (T. at 25-26.)  As such, there is no need to remand this case for vocational expert testimony. *Quintana v. Berryhill*, 2017 WL 491657 at *6 (W.D.N.Y. Feb. 7, 2017) (finding the ALJ's reliance on the grids was proper where the ALJ explained how the non-exertional limitations had little or no effect on the occupational base of unskilled work at all exertional levels).

In sum, Plaintiff clearly disagrees with the ALJ's evaluation of the evidence.  However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).  That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448.  This case does not present such a situation.  The Commissioner's decision is affirmed.

V.     **CONCLUSION**

For all of the foregoing reasons, this Court finds the ALJ's decision is free from legal error and is supported by substantial evidence.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED**.


Dated: July 26, 2023
        Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge